IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 7, 2023 Session

## MICHAEL GERSPER v. JONATHAN TURNER

**Appeal from the Circuit Court for Davidson County**
**No. 22C679  Kelvin D. Jones, Judge**

———————————————————

**No. M2022-01136-COA-R3-CV**

———————————————————

This is an interlocutory appeal pursuant to the Tennessee Public Participation Act ("TPPA"), Tenn. Code Ann. § 20-17-101 to -110, challenging the denial of the petition to dismiss all three claims asserted by the plaintiff. After the defendant filed his TPPA petition, the plaintiff voluntarily dismissed two of his three claims, leaving only his claim for malicious prosecution. While the TPPA petitioner sought to adjudicate all three claims under the TPPA, the trial court ruled that the only remaining issue was whether the plaintiff "has properly plead a claim for malicious prosecution and whether this action should be dismissed pursuant to TPPA." Following a hearing limited to the malicious prosecution claim, the trial court denied the petition to dismiss without setting forth the reasons for its decision. On appeal, the TPPA petitioner contends he was wrongfully deprived of a decision on his petition concerning the two claims the plaintiff voluntarily dismissed. He also contends the trial court erred in denying his TPPA petition to dismiss the malicious prosecution claim. Relying on the Supreme Court's most recent ruling in *Flade v. City of Shelbyville*, —— S.W.3d ——, No. M2022-00553-SC-R11-CV, 2024 WL 4448736, at *5 (Tenn. Oct. 9, 2024), we affirm the trial court's determination that the TPPA petitioner was not entitled to a decision on the two voluntarily dismissed claims. As for the trial court's denial of the petition to dismiss the remaining claim, malicious prosecution, we have determined that the TPPA petitioner established that the TPPA applies to the claim presented, which shifted to the plaintiff the burden to establish "a prima facie case for each essential element of the claim in the legal action." *See* Tenn. Code Ann. § 20-17-105. We have also determined that the plaintiff failed to establish an essential element of his malicious prosecution claim, that the proceeding brought against him by the defendant "terminated in the plaintiff's favor." *See Mynatt v. Nat'l Treasury Emps. Union, Chapter 39*, 669 S.W.3d 741, 746 (Tenn. 2023). Accordingly, we affirm the trial court's decision to not adjudicate the first two claims after they were voluntarily dismissed but reverse the trial court's decision denying the TPPA petition to dismiss the malicious prosecution claim and remand with instructions to dismiss that claim. Further, the TPPA states that, "[i]f the court dismisses a legal action pursuant to a petition filed under this chapter, the court shall award to the petitioning party . . . [c]ourt costs, reasonable attorney's fees, discretionary

costs, and other expenses incurred in filing and prevailing upon the petition." Tenn. Code Ann. § 20-17-107(a), (a)(1). Accordingly, we remand with instructions for the trial court to make the appropriate award as it pertains to the costs and fees incurred in the trial court and on appeal that pertain to the TPPA petitioner's efforts to dismiss the malicious prosecution claim.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part; Reversed in Part and Remanded**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Jamie R. Hollin and Sarah L. Martin, Nashville, Tennessee, for the appellant, Jonathan Turner.

Kirk L. Clements, Nashville, Tennessee, for the appellee, Michael Gersper.

**OPINION**

**FACTS AND PROCEDURAL BACKGROUND**

Michael Gersper ("Plaintiff") is a licensed real estate broker who owns and lives in a condominium in the historic Bennie Dillon building in downtown Nashville, Tennessee. Jonathan Turner ("Defendant") also owns and lives in a condominium in the Bennie Dillon.

In 2020, Plaintiff joined 17 other condominium owners in a lawsuit against the Bennie Dillon Condominium Association to remove Defendant from its Board of Directors ("the Board"). But that action ended in early 2021 when Defendant voluntarily resigned from his position. Shortly after that, the Board appointed Plaintiff to fill Defendant's seat until the next regular election, which was scheduled for December 2021.

Plaintiff took his role as a board member to heart, and in July 2021, he recorded a short video in which he walked around the building to highlight several maintenance issues, including a malfunctioning fire alarm and several water stains in the community room. Plaintiff circulated the video to only his fellow board members. Nonetheless, the video found its way to Defendant.

As the December 2021 board election approached, Defendant indicated that he would be campaigning to regain his board seat. But the Board informed Defendant that he was ineligible to run because Defendant had resigned during his third, consecutive term— the maximum allowed by the Association's bylaws.

On or about December 13, 2021, Defendant filed an ethics complaint against Plaintiff, a licensed realtor, with the Tennessee Real Estate Commission ("TREC").

Therein, Defendant alleged Plaintiff's 2021 video violated Plaintiff's ethical obligations as a licensed realtor:

> Mr. Gersper purchased in our building back in the summer of 2020. He became a realtor I believe in December of 2020 with the intent of trying to turn our building into an AirBnB or short term rental property and even ran for the board of directors in 2020 and was defeated. Now he is making videos of our building and putting them out there for others to see. As an owner, this video degrades our home, diminishes the value of our investment and claims disrespect for a historic building.

> Even though you won't ask for my opinion, I will provide it regardless for as an owner at this building for 16 years, it is my primary home. NO realtor in their right mind would degrade our building, let alone make a video making a mockery of the building itself. What kind of sick-minded person claims to be a realtor, let alone a licensed one, and presents our investment in this manner? Even people that are NOT realtors would never engage in this type of activity. This action is NOTHING short of deplorable and just plain STUPID. This violates:

> 1.) Making willful misrepresentation. Pretty self explanatory.

> 2.) Flagrant misrepresentation of making false statements and advertising them via video which has been circulated around to the owners of the building and outside of the building we have determined. We know for a fact that other realtors in Nashville were appalled.

> 3.) Misleading or untruthful advertising in a public forum knowing that he is a realtor in doing so and indicates in his statement "would you buy at this building" which attempts to diminish not only its historic value, but tarnishes the buildings reputation in the downtown environment.

> 4.) Mr. Gersper has represented owners in this building which I have no doubt due to his video whether it was a joke or not, has circulated and created a diminished value of said units.

> 5.) Any conduct, whether of the same or a different character from that herein before specified, which constitutes improper, fraudulent or dishonesty in representing the building.

> Please note that possibly several of the owners are congregating and will determine as to whether they decide to file a class action suit against Mr. Gersper due to reduced value of the building resulting in his lack of

professionalism by producing a video while knowingly representing himself as a realtor for property at the time.

But two months later, on February 16, 2022, TREC notified Plaintiff by letter that its "legal staff" had reviewed the complaint, "presented [it] to the Commission," and, without further explanation, stated that Defendant's complaint had been closed "with no action." The substance of the letter from the TREC reads:

RE:  Complaint Number: 202107898
Complainant:    Jonathan Turner
Status:         CLOSED/NO ACTION

The above reference complaint information has been reviewed by our legal staff and has been presented to the Commission. The decision has been taken to *close* the complaint with no action. Thank you for your cooperation with this matter.

Respectfully

Gretchen Culver
Complaint Coordinator

(Emphasis in original).

In April 2022, Plaintiff commenced this action against Defendant by filing a complaint for malicious prosecution, defamation/false light invasion of privacy, and tortious interference with business relations. Plaintiff alleged, *inter alia*, that Defendant filed his ethics complaint in retaliation for Plaintiff's role in the 2020 lawsuit and the Board's decision to stop Defendant's campaign for a board seat.

Defendant responded to the complaint by filing a "motion" to dismiss under the TPPA.[1] Defendant asserted that he was entitled to protection under the TPPA because he was exercising his First Amendment right to free speech when he filed the ethics complaint. Moreover, Defendant argued that Plaintiff could not make a prima facie case for his claims. Regardless, Defendant also asserted, *inter alia*, that he had proved a valid defense by

_____

[1] The motion also sought dismissal of the complaint pursuant to Tennessee Rule of Civil Procedure 12.02(6) for failure to state a claim. Because the trial court denied the TPPA petition, as well as the Rule 12.02(6) motion, no final judgment was entered. Nonetheless, pursuant to Tennessee Code Annotated § 20-17-106, the trial court's ruling on the TPPA petition is immediately appealable by this court. The ruling on the Rule 12 motion is not. Accordingly, as Plaintiff acknowledged during oral arguments, the denial of Plaintiff's motion under Rule 12.02(6) is not subject to this appeal. Thus, our analysis is limited to the TPPA petition.

submitting an affidavit in which Defendant explained that he had filed the ethics complaint in good faith after he "consulted with [his] realtor" who "expressed ethical concerns."

After Defendant filed his TPPA petition, Plaintiff filed a notice of voluntary dismissal of his defamation/false light and tortious interference claims under Tennessee Rule of Civil Procedure 41.01. Significantly, Plaintiff filed his notice of voluntary dismissal before the court conducted its hearing on the TPPA petition. Thus, the only claim remaining was Plaintiff's claim for malicious prosecution. Nonetheless, Defendant filed a notice of his intent to move forward with the TPPA hearing on all claims, asserting that he had "a vested statutory right" in having the trial court adjudicate the petition as to all three claims.

Plaintiff then filed a response to the TPPA petition, arguing that the statute did not apply because false statements are not constitutionally protected. In the alternative, Plaintiff contended that he had made a prima facie case as required by the TPPA. In support, Plaintiff supplied his own sworn declaration and those of board member Jennifer Estes and former board member William Howe, III.

According to Plaintiff, he made the 2021 video in a sarcastic and dramatic fashion "to highlight what potential owners would think of the building" if the Board did not fix several minor issues that the former property management company had refused to fix. Plaintiff insisted that he made the video in his capacity as a member of the Board and sent it only to other board members. Ms. Estes and Mr. Howe generally confirmed the timeline of events described in the complaint.

The trial court held a hearing on Defendant's TPPA petition in July 2022, after which it took the matter under advisement. In the order that followed, the court noted that Plaintiff had voluntarily dismissed his claims for defamation/false light invasion of privacy, and tortious interference with business relations. "Thus," the court observed, "the only remaining issue before this Court . . . is whether Plaintiff has properly plead a claim for malicious prosecution and whether this action should be dismissed pursuant to TPPA." Following some discussion, the court's order states, "[T]he Court respectfully DENIES the Motion because Plaintiff has plead a prima facie claim for malicious prosecution."

This appeal followed.

### ISSUES

Defendant raises three issues on appeal:[2]

_____

[2] In the "Summary of the Argument" and in the "Conclusion" of his appellate brief, Defendant asks this court to remand the case for the trial court to determine whether an award of sanctions against Plaintiff is appropriate under § 20-17-107(a)(2), which gives trial courts discretion to award this relief "to deter repetition of the conduct by the party who brought the legal action or by others similarly situated." However,

1. Did the trial court err when it denied Defendant's TPPA petition as to Plaintiff's malicious prosecution claim?

2. Did the trial court err when it refused to adjudicate Defendant's TPPA petition as to Plaintiff's claims of defamation/false light and tortious interference with a business relationship following Plaintiff's partial nonsuit of those claims? Specifically:

   a. Does the statutory exception to Rule 41.01(1) of the Tennessee Rules of Civil Procedure require a trial court to adjudicate a pending TPPA petition following a plaintiff's voluntary dismissal?

   b. Does the implied vested rights exception to Rule 41.01(1) require a trial court to adjudicate a pending TPPA petition following a plaintiff's voluntary dismissal?

3. Is the Defendant entitled to an award of attorney's fees and costs incurred in prosecuting this appeal?

### STANDARD OF REVIEW

The TPPA requires the petitioner to make "a prima facie case" that the action was filed in response to the petitioner's exercise of his or her First Amendment rights. *See* Tenn. Code Ann. 20-17-105(a). If so, the respondent must establish a "prima facie case" for each essential element of his or her claims. *Id*. § 105(b). Whether the parties satisfied their respective burdens is a legal issue that we review de novo. *See Charles v. McQueen*, 693 S.W.3d 262, 273 (Tenn. 2024). Likewise, we review the trial court's decision to enter an order of voluntary dismissal de novo with no presumption of correctness. *See Flade v. City of Shelbyville*, ⸺ S.W.3d ⸺⸺, No. M2022-00553-SC-R11-CV, 2024 WL 4448736, at *5 (Tenn. Oct. 9, 2024).

### ANALYSIS

### I. APPLICATION OF THE TPPA

As an initial matter, the parties dispute whether the TPPA applies to this case.

The TPPA applies to actions that are "based on, relate[d] to, or [commenced] in response to [the petitioning] party's exercise of the right of free speech, right to petition,

---

Defendant did not properly raise this as an issue under his Statement of the Issues Presented for Review as required by Tennessee Rule of Appellate Procedure 27(a)(4). "An issue may be deemed waived when it is argued in the brief but is not designated as an issue in accordance with Tenn. R. App. P. 27(a)(4)." *Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012) (citations omitted). Thus, this issue is pretermitted as being waived.

or right of association." Tenn. Code Ann. §§ 20-17-105(a). Defendant contends this action falls within the TPPA's ambit because Plaintiff filed the action in response to Defendant's exercise of the right to free speech.

The TPPA defines "[e]xercise of the right of free speech" as (1) "a communication" that was (2) "made in connection with a matter of public concern" and (3) "falls within the protection of the United States Constitution or the Tennessee Constitution." Tenn. Code Ann. § 20-17-103(3). The TPPA defines "matter of public concern" as including any "issue related to" the following:

(A) Health or safety;

(B) Environmental, economic, or community well-being;

(C) The government;

(D) A public official or public figure;

(E) A good, product, or service in the marketplace;

(F) A literary, musical, artistic, political, theatrical, or audiovisual work; or

(G) Any other matter deemed by a court to involve a matter of public concern;

Tenn. Code Ann. § 20-17-103(6).

Defendant contends that his complaint related to "environmental, economic, or community well-being" because it pertained "to Plaintiff's video's potential impact on Defendant's and other Bennie Dillon owners' economic investments." Alternatively, he asserts that the complaint related to a "good, product, or service in the marketplace" because it concerned "real estate, real estate services, or a realtor's ethics."

We agree that Defendant's ethics complaint related to community well-being. In *Charles v. McQueen*, No. M2021-00878-COA-R3-CV, 2022 WL 4490980, at *4 (Tenn. Ct. App. Sept. 28, 2022), *aff'd in part, rev'd in part on other grounds,* 693 S.W.3d 262 (Tenn. 2024), we construed "community" as synonymous with "a neighborhood, vicinity, or locality" or "[a] society or group of people with similar rights or interests." *Id.* (quoting Black's Law Dictionary 338 (10th ed. 2014)). Here, the statements in Defendant's ethics complaint concerned the impact of Plaintiff's video on the value of condominiums in the Bennie Dillon building. The Bennie Dillon condominium owners are a "community" as defined in *Charles*. Accordingly, we conclude that Defendant's allegations related to "a matter of public concern."

Still, Plaintiff contends that Defendant's complaint was unprotected by the United States Constitution and the Tennessee Constitution because "neither . . . protect false claims" and "Defendant intentionally misrepresented to TREC that Plaintiff disseminated the video as a realtor" and "falsely accused Plaintiff of making fraudulent misrepresentations in the video."

Respectfully, this argument places the cart before the horse. At this point, there has been no finding that Defendant's claims were false or that Defendant intentionally misrepresented the facts. Plaintiff's *allegation* that Defendant's statements were false does not prevent Defendant from making a prima facie case as required by the TPPA's first prong. *See Nandigam Neurology, PLC v. Beavers*, 639 S.W.3d 651, 668 (Tenn. Ct. App. 2021) (holding that communication "was an exercise of Defendant's right of free speech as that right is defined for purposes of the TPPA" despite the plaintiff's allegations of defamation); *accord Doe v. Roe*, 638 S.W.3d 614, 620 (Tenn. Ct. App. 2021); *see also Garner v. Thomason, Hendrix, Harvey, Johnson & Mitchell, PLLC*, No. W2022-01636-COA-R3-CV, 2024 WL 1618897, at *10 (Tenn. Ct. App. Apr. 15, 2024) (holding that allegations of frivolity did not prevent application of the TPPA), *appeal granted,* No. W2022-01636-SC-R11-CV, 2024 WL 4021932 (Tenn. Aug. 28, 2024).

For this reason, we conclude that Defendant satisfied his burden under the first prong of the TPPA; thus, the TPPA applies to this civil action. Having so determined, we will next consider whether the trial court erred in allowing Plaintiff to voluntarily nonsuit his defamation/false light and tortious interference claims after Defendant filed his TPPA petition.

## II. THE TPPA AND RULE 41.01

Defendant contends that the trial court erred when it refused to adjudicate his TPPA petition as to Plaintiff's claims of defamation/false light and tortious interference with a business relationship following Plaintiff's voluntary dismissal of those claims. He asserts that Plaintiff's right to voluntarily dismiss his defamation/false light and tortious interference claims was precluded by the statutory and the vested right exceptions to Rule 41.01. We have determined that both of Defendant's arguments are controlled by the recent decision in *Flade v. City of Shelbyville, Tennessee*, —— S.W.3d ——, No. M2022-00553-SC-R11-CV, 2024 WL 4448736 (Tenn. Oct. 9, 2024).[3]

The Tennessee Supreme Court in *Flade* recognized that "a plaintiff has a 'unilateral and absolute' right to take a voluntary nonsuit to terminate an action without prejudice, subject only to limited exceptions." *Id*. at *6. Relevant here, the right to take a voluntary nonsuit is "[s]ubject to the provisions of . . . any statute," *id*. (quoting Tenn. R. Civ. P.

---

[3] Realizing that the *Flade* decision would likely be dispositive of this issue, we withheld ruling on this case until the *Flade* opinion was released.

41.01(1)), as well as "an implied exception which prohibits nonsuit when it would deprive the defendant of some vested right," *id*. (quoting *Lacy v. Cox*, 152 S.W.3d 480, 484 (Tenn. 2004)).

In *Flade*, as in the present case, the plaintiff filed a notice of voluntary dismissal after a hearing on the defendant's TPPA petition was scheduled but "before the matter was heard by and submitted to the trial court." *Id*. at *8. On appeal, the *Flade* defendant argued, *inter alia*, that the plaintiff's right to voluntary dismissal was "subject to the provisions of" the TPPA statute as well as the implied exception for vested rights. *See id*. at *8, 13. The Court rejected both arguments.

The Court concluded that "the right to a voluntary dismissal pursuant to Rule 41.01 is not currently 'subject to' the provisions of the TPPA" because "the text of the TPPA does not clearly limit or otherwise address the right to take a voluntary nonsuit after the filing of a TPPA petition." *Id*. at *13. And regarding the implied exception, the Court noted that "vested rights are grounded in due process," but it "found nothing that would support a conclusion that due process principles mandate the adjudication of a pending TPPA petition notwithstanding the voluntary dismissal of the subject legal action." *Id*. at *16.[4]

Accordingly, we conclude that the trial court did not err by allowing Plaintiff to voluntarily dismiss his claims for defamation and tortious interference after Defendant filed his TPPA petition.

### III. PRIMA FACIE CASE OF MALICIOUS PROSECUTION

Defendant also contends that the trial court erred by denying his TPPA petition on Plaintiff's remaining claim for malicious prosecution because, *inter alia*, Plaintiff did not and cannot produce evidence that the underlying proceeding was terminated in Plaintiff's favor, which is an essential element for a malicious prosecution claim. We agree.

Under the TPPA's second prong, Plaintiff had the burden to establish "a prima facie case for each essential element of the claim in the legal action." Tenn. Code Ann. § 20-17-105. "To state a claim for malicious prosecution, a plaintiff must show that the defendant (1) instituted a proceeding against him 'without probable cause,' (2) 'with malice,' and (3) that the proceeding 'terminated in the plaintiff's favor.'" *Mynatt v. Nat'l Treasury Emps.*

---

[4] In *Flade*, the Court emphasized that, "at the time of the voluntary nonsuit in [that] case, the TPPA petitions at issue "had not been argued or submitted to the trial court for decision." 2024 WL 4448736, at *18 n.28. The Court declined to address whether the result "would be the same were those circumstances different." *Id*. But like the TPPA respondent in *Flade*, Plaintiff voluntarily dismissed his claims after the TPPA petition was filed but before it was submitted for a decision by the trial court. Accordingly, the holding in *Flade* controls the outcome of this issue in this case.

*Union, Chapter 39*, 669 S.W.3d 741, 746 (Tenn. 2023). Here, Plaintiff failed to produce evidence that the ethics proceeding "terminated in [his] favor."

In *Mynatt*, the Court clarified what a claimant must show to establish the third element of a malicious prosecution claim. *Id.* at 741. The Court held that "[a] plaintiff can pursue a claim for malicious prosecution only if an objective examination, **limited to the documents disposing of the proceeding or the applicable procedural rules**, indicates the termination of the underlying . . . proceeding **reflects on the merits of the case and was due to the innocence of the accused**." *Id.* at 752 (emphasis added).

Here, TREC notified Plaintiff that Defendant's complaint had been "reviewed by [its] legal staff" and "presented to the Commission" and that the Commission decided "to *close* the complaint with no action." This letter, however, does not show that the termination of the underlying proceeding reflected on the merits or was due to Plaintiff's innocence. *See Mynatt*, 669 S.W.3d at 752. Accordingly, the trial court should have granted Defendant's petition to dismiss the malicious prosecution claim.

For this reason, we reverse the trial court's denial of Defendant's TPPA petition to dismiss Plaintiff's claim for malicious prosecution and remand with instruction to dismiss the claim.

## IV. ATTORNEY'S FEES, COSTS, AND EXPENSES

Defendant has asked this court for an award of his trial and appellate attorney's fees, costs, and expenses.

The TPPA states that, "[i]f the court dismisses a legal action pursuant to a petition filed under this chapter, the court shall award to the petitioning party . . . [c]ourt costs, reasonable attorney's fees, discretionary costs, and other expenses incurred in filing and prevailing upon the petition." Tenn. Code Ann. § 20-17-107(a), (a)(1). We have construed this provision as applying to such expenses incurred in the trial court and on appeal. *See Nandigam*, 639 S.W.3d at 670.

Because we have determined that Defendant was entitled to the dismissal of Plaintiff's claim for malicious prosecution under the TPPA, Defendant is entitled to an award of his trial and appellate costs, fees, and expenses as provided in § 20-17-107(a)(1). Thus, we remand with instructions for the trial court to make the appropriate award as it pertains to the costs and fees incurred in the trial court and on appeal that pertain to the malicious prosecution claim.

## IN CONCLUSION

Based on the foregoing, we affirm the trial court's decision to not adjudicate the two claims that were voluntarily dismissed, reverse the trial court's denial of Defendant's TPPA petition as to Plaintiff's malicious prosecution claim, and remand with instruction to

dismiss the malicious prosecution claim and to award Defendant his reasonable and necessary trial and appellate costs, fees, and expenses, as provided in Tennessee Code Annotated § 20-17-107(a)(1), that pertain to the malicious prosecution claim. Costs of appeal are assessed against the appellee, Michael Gersper.

_____
FRANK G. CLEMENT JR., P.J., M.S.